475 So.2d 256 (1985)
TIMMY WOODS BEVERLY HILLS, LTD., a California Corporation, Appellant,
v.
Morris GREENWALD, Appellee.
No. 84-2345.
District Court of Appeal of Florida, Third District.
August 6, 1985.
On Motion for Clarification September 17, 1985.
Bercuson, Cahan, Lasky & Tarr and David Bercuson, Miami, for appellant.
Tralins & Potash and Bruce Freedman, North Miami, for appellee.
Before NESBITT, DANIEL S. PEARSON and FERGUSON, JJ.
NESBITT, Judge.
Timmy Woods Beverly Hills, Ltd. (Woods) appeals denial of its motion for new trial on the issue of liability. We reverse.
Woods is a manufacturer of ladies handbags, which planned to move its base of operation from California to Miami. On February 22, 1982, Greenwald and Woods entered into a two-year employment agreement which called for Greenwald to serve *257 "as Production Manager of Woods, to supervise the production of the products manufactured by Woods" in Miami. The contract established a base salary of $30,000 per year with a cost of living increase for the second year. Greenwald was also to receive a sum equal to one per cent of Woods's sales during the term of the agreement.[1]
Almost immediately after the contract was signed, Greenwald flew to Miami to accomplish a number of tasks, including preparation of a floor plan for the factory, setting up a budget, hiring personnel and investigating advertising costs. He was also to inspect a warehouse which Woods had leased as the site for its manufacturing operations. Greenwald reported that the warehouse was deficient and was told to locate another facility. He looked at two other facilities, recommended the larger of the two, but was told to rent the smaller. The lease of that facility was scheduled to commence on April 1, 1982.
Greenwald returned to California on March 10, 1982. On March 12, 1982, he was fired. Greenwald filed suit seeking damages for breach of contract and Woods counterclaimed on the same theory. The jury returned a verdict for Greenwald and assessed damages at $30,000. Woods filed a motion for new trial, which was granted as to damages, but denied as to liability.[2]
Woods contends that the jury's verdict is against the manifest weight of the evidence and contrary to the law. We agree.
The $30,000 damage award is clearly below that which the evidence would support. Generally, a party may not complain of an error in its favor, as Woods appears to be doing here. McMullen v. Hoofnagle, 106 Fla. 16, 142 So. 598 (1932); Limor v. Conli, 424 So.2d 31 (Fla. 3d DCA 1982). Application of such a rule is not appropriate, however, when the damage award is clearly inadequate and the issue of liability is hotly contested. Such circumstances give rise to a suggestion that the jury may have compromised its verdict. Manshul Construction Corp. v. Dormitory Authority, 111 Misc.2d 209, 444 N.Y.S.2d 792, 796-97 (S.Ct. 1981). In such a case, while the damage award is to the complaining party's advantage, the finding of liability which produces such an award is shrouded with doubt. Justice requires that a finding of liability be free from such doubt. See Gross v. Lee, 453 So.2d 495 (Fla. 1st DCA 1984) (on motion for rehearing) (reversing for a new trial on liability and damages where the "record creates a strong suspicion that the inadequate damage award resulted from a lack of conviction by the jurors in their liability finding"); Duquette v. Hindman, 152 So.2d 789 (Fla. 1st DCA 1963) (same); see also Erwin v. Chaney, 160 So.2d 139 (Fla. 1st DCA 1964) (finding, on a defendant's appeal from an adverse verdict awarding inadequate damages, that the trial court abused its discretion in limiting the new trial to damages).
The question of liability in this case is a close one. The primary dispute is over Greenwald's duties as production manager. Woods maintains that those duties included preparing a floor plan for the factory, establishing a budget, investigating advertising costs, hiring employees and any other acts necessary to get the product completed and shipped. Woods's breach of contract claim is based on the allegation that Greenwald did not adequately perform those duties. Greenwald, on the other hand, contends that his responsibilities as production manager were limited to supervising production, which he was never able to do because he was fired before the factory was set up and production began. Without reviewing all of the testimony, suffice it to say that there is evidence in the record supporting the positions of both parties and the question of liability is a close one.
With regard to damages, there is no question that the amount awarded is contrary *258 to the evidence and the law. The contract called for a base salary of $30,000 per year, plus a cost of living increase for the second year, which the parties stipulated would be six per cent or $1,800. Therefore, the contract required a salary payment of $61,800 over the two-year period. Additionally, Greenwald was entitled to a sum equal to one per cent of Woods's sales during the contract term. As previously indicated, see supra note 2, the parties stipulated to the amount of sales so that the one per cent commission amounts to $13,906.87. Consequently, the total value of the contract to Greenwald is $75,706.87. Woods did not plead or prove anything upon which the jury could have relied to reduce the amount Greenwald should recover.[3] These facts, in combination with the instruction given on damages, required, upon a finding that Woods breached the contract, an award of $75,706.87.[4]
The jury's award, therefore, is unquestionably inadequate and clearly contrary to the law on which it was instructed and the evidence which was before it. That fact, together with the close question on liability, creates a stigma which attaches to the jury's work.[5] The only just result is to relitigate the issue of liability. Accordingly, that portion of the order denying a new trial on liability is reversed and the cause is remanded for a new trial on liability and damages.
Reversed and remanded.

ON MOTION FOR CLARIFICATION
PER CURIAM.
Greenwald's motion for clarification is granted. Footnote number 2 of the opinion was meant to indicate that we treated the order appealed as being directed to both the claim and what remained of the counterclaim when the motion for new trial was ruled upon. The reversal of that order entitles the appellant to a new trial on both claims. Otherwise, our opinion stands unchanged.
NOTES
[1] The parties stipulated that Woods's sales during the two-year period were $478,168.35 for the first year and $912,518.45 for the second year. Those sales would entitle Greenwald to additional compensation of $13,906.87.
[2] Woods's motion did not specifically indicate that it was directed to both the complaint and the counterclaim. The claims are so interconnected, however, that it is safe to assume that Woods was requesting a new trial on both.
[3] See, e.g., Juvenile Diabetes Research Foundation v. Rievman, 370 So.2d 33 (Fla. 3d DCA 1979) (in breach of contract action by employee, it is employer's burden to plead and prove the failure to mitigate damages).
[4] The instruction on damages was as follows:

The purpose of an award of damages in a breach of contract action is to place the injured party in the same financial position as he would have occupied, if the contract had been fully performed.
In an action for breach of an employment contract brought by an employee for an alleged wrongful discharge prior to completion of the contract, the measure of damages to be applied is the contract price of salary or wages for the entire unexpired term of the contract.
In light of the facts that (a) Woods did not plead or prove anything which entitled it to a set-off or mitigation of damages, and (b) that the parties agreed that on a finding of liability Greenwald was entitled to all ($75,706.87) or nothing, it is not clear why the damage issue even went to the jury.
[5] During deliberations, the jury indicated its desire to know whether there "is a minimum amount that may be awarded." The question suggests that the jury was either confused on the law of damages, compromising on liability, or both. A rule which requires a complete new trial when liability is close and damages clearly inadequate prevents appellate courts from having to engage in the type of post-hoc mind-reading which would be necessary to decide whether the jury was confused, in which case a new trial on damages alone would be adequate, or compromising, which would require a new trial on liability as well.