686 So.2d 780 (1997)
MADSEN, SAPP, MENA, RODRIGUEZ & COMPANY, P.A., and Ramon Rodriguez, Appellants/Cross-Appellees,
v.
Walter LEAMAN, Jr. and June A. Leaman, Appellees/Cross-Appellants.
No. 95-0464.
District Court of Appeal of Florida, Fourth District.
January 22, 1997.
Kenneth R. Drake of Smith, Demahy, Drake, Cozad & Cabeza, P.A., Miami, for appellants/cross-appellees.
*781 Haggard & Parks, P.A., Coral Gables, Ralph Anderson and Gina E. Caruso of Hicks, Anderson & Blum, P.A., Miami, for appellees/cross-appellants.
POLEN, Judge.
The accounting firm of Madsen, Sapp, Mena, Rodriguez and Company, P.A. and Ramon Rodriguez (the firm) appeal a final judgment in favor of Walter and June Leaman on their claim alleging Rodriguez negligently advised the Leamans regarding financial consequences of the sale of the Leamans' marina. We reverse the judgment due to a combination of errors concerning the jury's deliberations and resulting verdict.
Rodriguez was retained by Mr. Leaman in 1986 to provide financial and tax advice for Leaman's business, Thunderboat Marina. On February 28, 1989, Leaman sold the marina to Westrec Properties, Inc., realizing proceeds of $642,000 (The Westrec deal). Leaman was found to have tax liability on the gain from the sale, and paid $221,117.34 to the IRS. In his action against Rodriguez, Leaman alleged he would have pursued a competing proposal, the Wallrich proposal, had he been properly advised by Rodriguez.
Leaman argued Rodriguez's bad advice caused him to sell his business for only 40 to 45% of its value, and caused Leaman to lose the opportunity to become involved with the Wallrich deal which would have given the Leamans $297,514 more in value than the Westrec deal, based on the testimony of Leaman's expert, Mr. Berwick.
Following the presentation of sharply contrasting evidence regarding whether Rodriguez was aware of the Wallrich proposal when advising Leaman, and what, if anything, Rodriguez told Leaman, the jury was instructed if it found for the Leamans, it should consider as damages only the difference in value between the Westrec offer and the Wallrich offer. The case was submitted to the jury. In the first of five notes, the jury asked for a phone book or calendar for the years 1988 through 1989. Counsel agreed to a written response advising the jury the requested items could not be supplied, and the jury was informed it must rely on the testimony it heard.
The jury's second request was for a copy of Mr. Wallrich's deposition. Again the jurors were advised they must rely on their own recollections. The jury's third note consisted of the word "deadlocked." With the parties' agreement, the trial court gave a standard "Allen" charge. Following continued deliberations, the jury wrote a fourth note. At this point the jury advised "We cannot all agree on the percentage. What do we do in this case?" The parties agreed to a written response stating: "You continue to deliberate to try to resolve that issue." Deliberations continued and the jury presented the court with a fifth question: "We've agreed on a percentage. Now we cannot agree on the money. Can we complete the form through number three?" (Question number three asked for the percentage of negligence assigned to each party.) Over the firm's objection, the court responded by writing a note stating: "No, I would ask that you continue to deliberate through the entire verdict." At this point, the firm moved for a mistrial. It argued the jury's questions indicated its verdict was a series of compromises. The court denied the motion and deliberations continued, with the jury ultimately returning a verdict finding both parties fifty percent negligent, and awarding damages equal to the precise amount of income tax the Leamans paid following the sale of the marina.
The firm argues the court's charges following the jury's announced deadlock led it to believe it must reach a verdict. See Leatherby Ins. Co. v. Eckerson, 362 So.2d 320 (Fla. 3d DCA 1978) (affirming mistrial where jury's first verdict was inconsistent, and jury continued deliberating, ultimately advising court it was unable to agree on a damage amount). It argues the ultimate verdict constituted a compromise, as evidenced by the clearly inadequate damage award, the hotly contested issue of liability, and the jury's series of questions during deliberations.
We agree the amount of damages awarded was contrary to the evidence and the law. See Timmy Woods Beverly Hills, Ltd. v. Greenwald, 475 So.2d 256 (Fla. 3d DCA 1985). On a finding the firm and Rodriguez *782 were negligent, the jury was required to return a verdict based on the difference in the value to the Leamans of the two proposals. Instead, the jury awarded damages equal to the precise amount of income taxes paid by the Leamans, even though the Leamans never claimed this as their damages, nor did the court instruct the jury on such an element of damage. This damage award, in combination with the contested liability issue and the series of questions posed during the jury's deliberations causes us to conclude the jury compromised its verdict. See Sharlow v. Freed, 501 So.2d 621 (Fla. 5th DCA 1986), rev. denied, 506 So.2d 1041 (Fla.1987) (reversing for new trial on all issues where question of liability was hotly contested, inadequate verdict was returned, and questions posed by jurors during deliberations indicated the jurors were confused about liability and damages). Therefore, we reverse the final judgment and remand for a new trial on all issues.
As to Leaman's cross-appeal, because we remand for a new trial, the issue of comparative negligence may be argued and considered anew by the trial court.
Finally, we are not prepared to say the trial court erred in failing to direct a verdict for the firm. Contrary to the firm's argument, Mr. Berwick's expert testimony was properly before the jury because the firm's motion in limine seeking to exclude this testimony was insufficient to preserve alleged error, absent a contemporaneous objection. Nordyne, Inc. v. Florida Mobile Home Supply, Inc., 625 So.2d 1283 (Fla. 1st DCA), rev. dismissed, 630 So.2d 1100 (Fla. 1993). We are unable to conclude there was no evidence on which the jury could legally base a verdict for damages in favor of the Leamans. See Floyd v. Video Barn, Inc., 538 So.2d 1322 (Fla. 1st DCA), appeal dismissed, 542 So.2d 1335 (Fla.1989).
REVERSED and REMANDED.
GLICKSTEIN and WARNER, JJ., concur.