# Third District Court of Appeal

## State of Florida

Opinion filed on October 29, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D12-3444
Lower Tribunal No. 06-1163
_____

**REWJB Dairy Plant Associates, etc., et al.,**
Appellants,

vs.

**Bombardier Capital, Inc.,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Michael A. Genden, Judge.

Jose Garcia-Pedrosa; Ross & Girten, and Lauri Waldman Ross, for appellants.

May, Meacham & Davell, P.A., and Robert C. Meacham and Christopher D. Barber (Fort Lauderdale), for appellee.

Before ROTHENBERG, LOGUE, and SCALES, JJ.

SCALES, J.

REWJB Dairy Plant Associates, etc., et al. (REWJB or Farm Stores), Defendants below, appeal from the trial court's December 4, 2012, order granting Plaintiff Bombardier Capital Inc.'s (Bombardier) motion for additur. The order granting Bombardier's additur motion also retroactively granted Bombardier's motion for directed verdict on Farm Stores' accord and satisfaction defense. We reverse and remand for a new trial on both liability and damages. We likewise reverse the order insofar as it granted a directed verdict on Farm Stores' defense of accord and satisfaction.

## I. Facts

### A. **The Contract**

In August 1999, REWJB, doing business as Farm Stores, executed and delivered to Bombardier, its financer, a master lease agreement; an amendment to the master lease agreement; an interim lease addendum; and, at various times after August 1999, fourteen sequentially-numbered equipment schedules, which expressly incorporate the master lease agreement into each equipment schedule (collectively, all delivered documents are referred to as "the Contract"). The Contract consisted of certain voluminous equipment schedules (equipment schedule or equipment schedules referred to as "ES"), whereby Bombardier leased to Farm Stores eight prefabricated buildings ("prefabs"),[1,2] certain computer equipment and related items,[3] and an icemaker.[4]

2

The ES relevant to this appeal relate to seven of the prefabs leased pursuant to ES 4-10, and the computer equipment leased pursuant to ES 2.

The Contract provided that each ES was separately enforceable and that the terms and conditions of the Contract would apply to each ES. Thus, each ES represented a separate contract.

Some of the ES contained an automatic renewal provision, which included an option allowing Farm Stores to purchase the leased property for a specific price. Pursuant to this provision, the lease would automatically renew unless Farm Stores provided Bombardier with notice at least 270 days prior to the lease term's expiration.[5]

---

[1] ES 4, 5, 6, 7, 8, 9, and 10.
[2] ES 1, which also was a prefab, is not at issue in this appeal.
[3] ES 2.
[4] ES 3.
[5] The automatic renewal provision appearing in some of the ES is quite confusing, and appears to be the victim of a typographical error. Specifically, the automatic renewal provision references subparagraph (ii), which provides for the **return** of the equipment, rather than a lease extension. The provision reads, in relevant part, as follows:

> Purchase, and Renewal, Options: At the end of the initial non-cancelable term, provided that no Event of Default as defined in the Lease has occurred and is continuing to occur at the end of the initial non-cancelable term or subsequent renewal term, Lessee shall have the option to exercise the following options by providing Lessor with at least (270) days written notice of its intent to do one or more of the following:
>
> (i)      purchase all and only all of the equipment for an amount equivalent to 20.00% of the original equipment cost;

3

## B. The Parties' Correspondence

On May 1, 2005, Farm Stores wrote to Bombardier, stating:

> As we have previously advised your firm, Farm Stores desires to return all the equipment under schedule 002. Please notify us as to where we may return the equipment and kindly forward the necessary documentation to terminate the above referenced lease to my attention.

On June 9, 2005, Bombardier responded that ES 2—whose five-year term commenced in August 2000 and expired July 1, 2005—required Farm Stores to provide 270 days' (i.e., on or before October 4, 2004) written notice prior to the end of the lease term. Bombardier advised Farm Stores that, since Farm Stores' May 1, 2005, notice was untimely, ES 2 would be automatically renewed for a one-year term, but Farm Stores could purchase the equipment for the price outlined in ES 2.

> (ii)     Return, all and only all, the Equipment to Lessor at Lessee's expense, with the original documentation, in the original packaging, at a location chosen by the Lessor.
>
>      . . . .
>
> If Lessee fails to notify Lessor of its intentions at least two hundred seventy (270) days prior to the expiration of this Schedule, it is agreed that Lessee shall extend the Lease as to all of the Equipment covered hereunder **in accordance with option (ii) above**. During the renewal period, Lessee may purchase any or all of the Equipment covered hereunder for the price computed in accordance with option (i) above by providing Lessor with sixty (60) days prior written notice.

(emphasis added).

4

Between Bombardier's June 9, 2005, response letter and August 22, 2005, the parties engaged in discussions regarding the Contract and the various ES. As a result of such discussions, Farm Stores' president sent Bombardier an August 23, 2005, letter, which Farm Stores characterizes as the memorialization of the parties' "goodbye agreement."

In that August 23, 2005, "goodbye agreement" letter, Farm Stores states that it will continue to lease the computer equipment covered by ES 2 for an additional year (i.e., from July 1, 2005, through January 30, 2006), after which time Farm Stores will own the equipment. In furtherance of this "goodbye agreement," Farm Stores issued a $31,560.71 check to Bombardier (rent for the months of July, August, and September 2005), which Bombardier negotiated.

Farm Stores' "goodbye agreement" letter also purported to address that portion of the parties' Contract related to the prefabs. The relevant part of the letter reads as follows:

> As for the prefabricated buildings, Farm Stores proposes to issue one final payment per month per building until such time as all the buildings are paid in full. Farm Stores will commence with the first such payment on or about September 1, 2005.

Consistent with the "goodbye agreement" letter, payments in full for prefabs identified in ES 4, 9, and 10, followed sequentially in August, September, and October 2005. Cover letters—dated August 25, 2005; September 11, 2005; and October 4, 2005—accompanied the payments and made clear that each payment

was tendered for each of these prefabs, and was intended as payment in full satisfaction of Bombardier's claims regarding ES 4, 9, and 10. Bombardier cashed each check.

## C. Pre-trial Proceedings

Bombardier disputes that the parties had a "goodbye agreement," and that, even if such "goodbye agreement" existed, Farm Stores did not fully perform same, thus rendering Farm Stores liable for all sums due under the Contract.

Farm Stores asserts that the "goodbye agreement" letter constituted an accord and satisfaction, and, to the extent that the account was not satisfied, it was Bombardier who prevented such satisfaction.

On January 19, 2006, Bombardier filed a single-count complaint against Farm Stores for breach of contract. While not expressly delineated in its complaint, Bombardier essentially claimed that Farm Stores: (1) failed to pay certain sums in connection with computer equipment and related items leased under ES 2; (2) failed to pay certain sums in connection with the prefabs leased under ES 4 through 10; and (3) failed to reimburse Bombardier, as required by the Contract, for certain personal property tax payments, which Bombardier allegedly made to taxing authorities. Farm Stores answered, raising accord and satisfaction[6] and set off[7] as affirmative defenses.

---

[6] Farm Stores' accord and satisfaction affirmative defense read as follows:

6

Farm Stores subsequently filed amended affirmative defenses to assert equitable estoppel as a defense to Bombardier's claims, i.e., that Bombardier was equitably estopped from pursing certain of its claims because Farm Stores had detrimentally relied upon Bombardier's acquiescence to the "goodbye agreement" and related payments and correspondence. Farm Stores also raised a defense of

---

> [A]n agreement was reached between the parties, first verbally and then confirmed in correspondence passing between them, that Defendants would pay off the prefabricated buildings that remained unpaid, at the rate of one building per month, at the buy-out amount of 20% of original cost, as set forth in the contract between the parties. For a period of several months, Defendants paid to Plaintiff the exact buy-out amounts required by mailing checks in those amounts to Plaintiff, which checks Plaintiff accepted, presented for payment, and was paid.

[7] Farm Stores' affirmative defense for set-off read:

> Plaintiff improperly applied payments that it received from defendants by applying to equipment (Schedule 2) payments made for prefabricated buildings (Schedules 1 and 3-10), although nothing was owed to Plaintiff for equipment under Schedule 2. The payments improperly applied should instead be set off against any sums that may remain due for prefabricated buildings.

During the course of litigation, Farm Stores took the position that its agreement—as manifested in its August 23, 2005, "goodbye agreement" letter to Bombardier—to pay an additional year of rent for the computer equipment leased per ES 2 was based on Farm Stores' erroneous belief that the 270-day notice provision was contained in ES 2. Farm Stores' president testified that he had actually stricken the 270-day notice provision from ES 2, so that his initial May 1, 2005, purported termination of ES 2 should have been effective. Thus, Farm Stores should receive a set off for sums Farm Stores paid to Bombardier after Farm Stores' May 1, 2005, purported termination of ES 2.

7

payment, asserting that Bombardier had been paid for ES 2 and "most or all" of the prefabs.

In May 2011, the parties filed cross-motions for summary judgment. The trial court found that, despite the confusing language contained in the automatic renewal provisions, the automatic renewal provisions were applicable, and, therefore, the leases on the prefabs were automatically renewed for twelve months because Farm Stores "did not give the applicable 270[-]day notice."

However, the trial court denied Bombardier's motion for summary judgment on Farm Stores' defenses of accord and satisfaction and setoff. The trial court determined that disputed issues of fact remained as to: (1) whether an accord had been reached, and, if so, whether the parties had satisfied that accord; and (2) the related issue of whether Bombardier had appropriately applied the funds paid by Farm Stores.[8]

With regard to the computer equipment lease (i.e., ES 2), the trial court denied Bombardier's summary judgment motion, holding that the parties' dispute regarding whether a valid notice obligation existed presented a fact question for the jury.

### D. **Trial Proceedings**

---

[8] While not entirely clear, it seems that, given the trial court's summary judgment rulings, if the jury found that the parties had entered into the "goodbye agreement," then, presumably, whether Farm Stores had failed to provide the required lease termination notice with regard to the prefabs would be irrelevant.

A new trial judge inherited this case on the morning of trial, and the trial ensued on May 14, 2012.

During trial, Bombardier presented alternative damage schedules, and its damage witness presented the jury with different damage options. Farm Stores presented no evidence of damages during trial, but in closing argument suggested it was owed $11,000 from Bombardier.

At the conclusion of the evidence, Bombardier moved for a directed verdict on Farm Stores' accord and satisfaction defense. The trial court reserved ruling, but, at least initially, determined that the defense presented a factual question for jury determination, and the jury was instructed on this defense. Recognizing the previously entered summary judgment, the trial court instructed the jury as follows:

> One. As to schedules 4 through 10 (the leases on the prefabricated buildings), I have ruled that, A, the lease contains a 270-day notice provision if Farm Stores did not wish to renew the lease; B, Farm Stores did not give the 270-day notice as required by the leases; C, as a result, pursuant to the terms of the schedule, the leases on the prefab building[s] were renewed for 12 months. Accordingly, the Court has granted Summary Judgment in Bombardier's favor as to the equipment schedules.
> Number two, as to Farm Store's [sic] defense of payment, Farm Stores admits that it did not make full payment. Accordingly, the Court finds in Bombardier's favor as to Farm Stores' defense of payment.

The trial court also instructed the jury on Farm Stores' defense of accord and satisfaction.

The trial court proposed, and both parties agreed to use, a general verdict form. The verdict form simply stated:

1.  Did Farm Stores breach their contracts with Bombardier in any way?

    YES _____   NO _____

2. If the answer to this question is No, your verdict is for Farm Stores and do nothing but sign and date this verdict.
   If the answer to this question is Yes, please state in dollars the total amount of damages that the greater weight of the evidence shows has been proven by Bombardier.

    $ _____

After a week-long trial, on May 21, 2012, the jury returned a verdict, answering "Yes" to question one. It awarded damages to Bombardier in the amount of $51,000.

### E. **Post-Trial Motions**

Pursuant to section 768.74, Florida Statutes (2012)[9], Bombardier filed post-trial motions: (1) for additur or for a new trial on damages, (2) to set aside the

_____

[9] Section 768.74, Florida Statutes (2012), provides, in pertinent part:

(1) In any action to which this part applies wherein the trier of fact determines that liability exists on the part of the defendant and a verdict is rendered which awards money damages to the plaintiff, it shall be the responsibility of the court, upon proper motion, to review the amount of such award to determine if such amount is excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact.

(2) If the court finds that the amount awarded is excessive or

10

verdict, and (3) for entry of judgment in accordance with its motion for directed verdict. Bombardier urged:

> Clearly, the jury believed (and found that) Farm Stores was in breach of one or more of the schedules entered into between the parties. However, . . . the amount of damages awarded to Bombardier cannot be explained under any view of the evidence. Moreover, even taking into consideration Bombardier's motion for a directed verdict on the defense of accord and satisfaction, there is still no way to rationalize the verdict amount.

(footnote omitted).

On July 27, 2012, the trial court held a hearing on Bombardier's motions but did not make any oral findings. At the conclusion of the hearing, the trial court requested the testimony of four witnesses, the transcript of the post-trial motion hearing, and that the parties submit proposed orders within thirty days of the date of the hearing.

On September 21, 2012, Farm Stores submitted its proposed order, not surprisingly, suggesting that the trial court deny Bombardier's motions for additur and new trial. Bombardier submitted its proposed order, suggesting that the trial court grant its motion and add $1,077,062.18 to the existing $51,000 jury award.

On December 4, 2012, the trial court entered a written order, adopting Bombardier's proposed order verbatim. The trial court found: (1) Bombardier was entitled to a directed verdict on Farm Stores' defense of accord and satisfaction; (2)

---

inadequate, it shall order a remittitur or additur, as the case may be.

11

additur was appropriate "because . . . no evidence concerning the contractually required notice of termination was ever presented in connection with the prefabricated building schedules"; (3) the verdict had "no correlation to any reasonable evidence presented by any party"; (4) there "is no way to rationalize or reconcile the verdict amount," and (5) Bombardier was entitled to judgment in the amount of $1,128.062.18.[10]

Pursuant to section 768.74(4), Florida Statutes (2012), the trial court allowed Farm Stores seven days to advise whether Farm Stores accepted the additur. As outlined in the statute, if Farm Stores objected to the additur, the trial court would order a new trial on damages only. Farm Stores responded to the trial court's additur order by filing this appeal, thus rejecting the trial court's proposed additur award.[11]

## II.    Analysis

---

[10] The trial court's additur award is calculated based solely on the automatic renewal of the leases associated with prefabs 5, 6, and 7, through May 1, 2012, and interest through May 14, 2012 (the date trial commenced). No portion of the award is attributable to any of Bombardier's other claims (i.e., prefabs 4, 8, 9 and 10, computer equipment leased pursuant to ES 2, the ice maker leased pursuant to ES 3, Bombardier's claim for taxes).

[11] We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.110(a)(3) and 9.130(a)(4). See Westminster Cmty. Care Servs., Inc. v. Mikesell, 12 So. 3d 838, 839 n.1 (Fla. 5th DCA 2009) (reviewing a trial court's order granting the plaintiff's motion for additur and new trial on damages as an appealable nonfinal order pursuant to Rules 9.110(a)(4) and 9.130(a)(4)).

## A. Additur and New Trial

Try as we might, we, like the trial court and the parties, are simply unable to reconcile the jury's verdict with the evidence. Nor are we able to discern how the jury adjudicated Farm Stores' defenses, how they calculated damages, or how they applied the trial court's instructions.

### 1. The Trial Court's Additur Order

The verdict form at issue here simply reads, "Did Farm Stores breach their contracts with Bombardier in any way?" Although both parties agreed to the use of this general verdict form, it is impossible to determine **which** ES the jury determined Farm Stores breached. Similarly, while the jury's award surely suggests that Farm Stores prevailed on its defense that an accord was reached on the prefab disputes, it is impossible to quantify the effect of the defense on the various contracts implicated.[12]

It is similarly impossible to determine how the jury resolved the dispute regarding the notice provision in ES Number 2. It is also impossible to determine how (or if) the jury award was affected by Farm Stores' setoff defense.

---

[12] While the evidence might have established that Farm Stores tendered, and Bombardier negotiated, payments for prefabs 4, 8, 9, and 10, Farm Stores admitted it had not yet tendered such payments for prefabs 5, 6, and 7. According to Farm Stores' own proposed order on post-trial motions, payments for prefabs 5, 6, and 7, were valued at $186,062.

13

The order on appeal, though, calculated additur very specifically. The trial court simply assumed the jury found in favor of Farm Stores on ES Number 2 (computer equipment), and awarded nothing to Bombardier on that claim. However, responding to the jury's $51,000 breach of contract award, the trial court also found that, even if the jury "awarded nothing for computer equipment [ES Number 2], the icemaker [ES Number 3], prefabs 8, 9 and 10 and taxes, the damage calculation options and evidence for pre-fabs 5, 6, and 7 were . . . in the hundreds of thousands of dollars." Yet, the trial court's order rejects the jury's implicit finding that the parties' dispute over the prefabs was resolved by Farm Stores' asserted accord and satisfaction, and, instead retroactively grants a directed verdict to Bombardier on that issue.

The trial court then awards Bombardier damages, based on automatic renewals for prefabs 5, 6, and 7, through May 1, 2012, and interest through May 14, 2012 (the first day of trial), resulting in a total damage figure of $1,128,062.18.

## 2. **New Trial on Liability and Damages**

Pursuant to section 768.74(4), Florida Statutes (2012), if the party adversely affected by an additur does not agree to the additur, " the court shall order a new trial in the cause **on the issue of damages only**." (emphasis added).

However, a new trial on **both** liability and damages is required where liability was hotly contested at trial, and it is evident the "jury's . . . mingling of the

14

issues of liability and damages on the verdict form [is] suggestive of compromise." Westminster Cmty. Care Servs., Inc. v. Mikesell, 12 So. 3d 838, 841-42 (Fla. 5th DCA 2009); Food Lion v. Jackson, 712 So. 2d 800, 803 (Fla. 5th DCA 1998) (recognizing that section 768.74 "instructs that the adverse party be given the choice of accepting the amount of additur or a new trial on damages only," and holding that a new trial on the issue of liability also should be ordered if liability was hotly contested).

In the instant case, the jury answered "Yes" to the question whether Farm Stores breached its contracts with Bombardier "in any way." Unfortunately, the jury was not asked **which** of the several ES, comprising the Contract, Farm Stores had breached. And, as mentioned, it is **impossible** to discern, from the verdict form, or from the record, which ES were breached or how the jury's consideration of Farm Stores' affirmative defenses were reflected in the ultimate damage award. Not only is it clear from the record that liability was hotly disputed, but also it is clear that the jury's verdict was the result of some type of compromise on the issue of liability. Neither party provided any plausible explanation for the jury's verdict. Indeed, with this jury verdict form, any explanation would likely be nothing more than rank speculation.[13]

---

[13] Our task is further complicated by the fact that, consistent with the trial court's summary judgment, the jury was instructed that Farm Stores had not provided the required 270-day notice contained in the prefab contracts. While this instruction was proper, the general verdict form used does not allow for meaningful appellate

Therefore, given this case's unique factual backdrop, we are compelled to reverse and remand for a new trial on all issues.  See Timmy Woods Beverly Hills, Ltd. v. Greenwald, 475 So. 2d 256, 258 n.5 (Fla. 3d DCA 1985) ("A rule which requires a complete new trial when liability is close and damages clearly inadequate prevents appellate courts from having to engage in the type of post-hoc mind-reading which would be necessary to decide whether the jury was confused, in which case a new trial on damages alone would be adequate, or compromising, which would require a new trial on liability as well.").

### B. **Directed Verdict**

We also reverse the post-trial order granting a directed verdict in favor of Bombardier on Farm Stores' defense of accord and satisfaction.  See Health Options, Inc. v. Palmetto Pathology Servs. P.A., 983 So. 2d 608, 613 (Fla. 3d DCA 2008) (stating an order granting a motion for directed verdict is reviewed de novo).

There was conflicting evidence on the issue of whether the parties' conduct constituted an accord and satisfaction for some, or all, of Bombardier's ES claims. The record reflects Bombardier negotiated checks tendered by Farm Stores as full and final payment for each of several prefabs, and the parties' correspondence

_____

review of how damages or affirmative defenses were decided by the jury.

regarding this issue plainly presents a factual issue for jury consideration. Such a conflict generally is a question for the province of the jury. See Cornette v. Rite Commc'n Sys., Inc., 573 So. 2d 1055, 1056 (Fla. 2d DCA 1991) (reversing directed verdict on accord and satisfaction where there was conflicting evidence for the jury to resolve); S. Bell Tel. & Tel. Co. v. Acme Elec. Contractors, Inc., 418 So. 2d 1187, 1189 (Fla. 4th DCA 1982) ("Generally, the determination of whether there is an accord and satisfaction is left to the finder of fact.").

This ruling is, obviously, without prejudice to the parties' ability to again move for a directed verdict on this, or any other, issue if the facts established at trial warrant such relief.

## III. Conclusion

We remand for a new trial on both liability and damages. We likewise reverse the directed verdict on Farm Stores' defense of accord and satisfaction.

Reversed and remanded with directions consistent herein.

17