IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

FLNC, INC., D/B/A FLORIDA LIVING
NURSING CENTER,

      Appellant/Cross-Appellee,

 v.                                Case No.  5D16-1725

JOISE RAMOS, AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF SONIA MERCADO-BOSQUE,

      Appellee/Cross-Appellant.

_____/

Opinion filed May 19, 2017

Appeal from the Circuit Court
for Orange County,
John Marshall Kest, Judge.

Patrick H. Telan, Philip J. Wallace, and
Matthew E. Moats, of Grower, Ketcham,
Eide, Telan, & Meltz, P.A., Orlando, for
Appellant/Cross-Appellee.

Victor Kline, of Greenspoon Marder, PA,
Orlando, and Michael J. Carter, of Morgan
& Morgan, Orlando, for Appellee/Cross-
Appellant.


EDWARDS, J.

      This appeal and cross-appeal are from the trial court's order granting a partial new

trial on the issues of causation and damages, but denying a new trial on liability in a

nursing home negligence case. The jury returned a verdict finding that FLNC, Inc. D/B/A Florida Living Nursing Center ("Nursing Home") negligently caused injury to its patient, Sonia Mercado-Bosque. The jury awarded Joise Ramos, son of Sonia Mercado-Bosque and Personal Representative of Ms. Mercado's Estate ("the Estate"), stipulated medical expenses, but did not award damages for pain and suffering or other intangible damages. Because liability was hotly contested and there are strong indications that the jury rendered an improper compromised verdict, we conclude that the trial court erred in ordering only a partial new trial. Accordingly, we remand for a new trial on the issues of liability, causation, and damages.

Ms. Mercado had several significant health problems, including multiple sclerosis and diabetes, that progressively impaired her mobility and left her unable to care for herself. Her lack of mobility, permanently contracted legs, and other health problems made her susceptible to developing skin ulcers, which Nursing Home's staff tried to avoid by frequently repositioning her and by using special footwear. While a resident at Nursing Home, she developed skin ulcers and an infection of her left foot, which resulted in gangrene. Her treating doctors decided that amputation of both legs above the knee was the best way to avoid future skin ulcers on her lower extremities; they amputated her left leg at the knee level. Ms. Mercado passed away after her surgery due to unrelated causes.

The Estate sued Nursing Home, claiming that the skin ulcers, infection, gangrene, and need for amputation resulted from Nursing Home's staff negligently caring for Ms. Mercado. At trial, the Estate's medical expert testified that Nursing Home's staff did not regularly and frequently reposition Ms. Mercado and that the resulting constant pressure

2

led to the skin ulcers, infection, and gangrene. The Estate's expert also testified that Nursing Home's staff failed to make and keep proper records of the care provided to Ms. Mercado.

Nursing Home's nursing expert testified that the record keeping was proper and that the records confirmed that Ms. Mercado was frequently repositioned and otherwise well cared for in terms of preventing and treating any skin ulcers. Nursing Home's additional medical expert testified that Ms. Mercado's diabetes impaired circulation to her feet, which made her extremely susceptible to infection, and, when combined with her leg contractures, made the knee-level amputation unavoidable. Nursing Home's medical expert explained that if Nursing Home's failure to reposition Ms. Mercado caused the left foot ulcer, Ms. Mercado would have had skin ulcers at other locations, but she did not. Those experts additionally testified that the care and treatment provided to Ms. Mercado met or exceeded the standard of care. In this battle of the experts, liability and causation were hotly contested.

It was clear from the testimony that Ms. Mercado experienced discomfort and pain; however, the cause, nature, extent, and what portion was related to the left foot, the amputation, the leg contractures, or her other health conditions were disputed. The parties stipulated at trial that the relevant past medical expenses totaled $13,309.23. The jury deliberated for approximately four hours, sent out two written damage-related questions to the court, and then returned a verdict finding that Nursing Home negligently caused injury to Ms. Mercado. The jury awarded $13,309.23 for past medical expenses but did not award any amount for pain, suffering, or other intangible damages. Neither party requested the court to poll the jury.

3

The Estate filed a motion seeking additur or a new trial only on damages, which Nursing Home opposed. The trial court issued a detailed order granting an additur of $9500 after finding the evidence of intangible damages was "sparse" and noting that it was difficult to determine which of the pain and suffering was negligence-related. The additur order included a proviso that a trial on damages alone would be held if the additur was rejected. Nursing Home moved the court to reconsider and sought a new trial on liability and damages. The Estate rejected the additur and sought a new trial on damages only. The trial court denied Appellant's motion for reconsideration, but entered an order for a new trial on causation and damages but not on liability. Both sides appeal the order.

The trial court found that it was "inconceivable . . . that a jury of reasonable persons could find negligence and causation . . . but not award at least some damages for the intangible elements." Our review of the record and briefs leads us to conclude that "it is more than merely conceivable that the jury 'interwove the issues of liability and damages on the jury form in an inconsistent way, suggestive of a compromise on liability, possible confusion on the law of damages, or both.'" *Calloway v. Dania Jai Alai Palace, Inc.*, 560 So. 2d 808, 810 (Fla. 4th DCA 1990) (quoting *Rivera v. Aldrich,* 538 So. 2d 1390, 1392 (Fla. 3d DCA 1989)). The hallmarks of a compromised verdict in a tort claim are a clearly inadequate damage award coupled with a finding of liability in a case where liability was hotly contested. *See Watson v. Builders Square, Inc.*, 563 So. 2d 721, 722 (Fla. 4th DCA 1990). An improper compromised verdict on the issue of liability is highly probable when the jury returns a verdict finding that the defendant negligently caused injury to plaintiff, but "awarded [the plaintiff] her [past] medical expenses without considering non-economic damages." *Food Lion v. Jackson*, 712 So. 2d 800, 802 (Fla. 5th DCA 1998); *see also*

*Ochlockonee Banks Rest., Inc. v. Colvin*, 700 So. 2d 1229, 1231 (Fla. 1st DCA 1997) (holding that verdict of liability that awarded past medical expenses only and nothing for pain and suffering clearly shows it was result of compromised verdict where negligence was seriously disputed); *Bucci v. Auto Builders S. Fla., Inc.*, 690 So. 2d 1387, 1389 (Fla 4th DCA 1997), *rev'd on other grounds,* 709 So. 2d 1381 (Fla. 1998) (holding that jury's damages-related questions and verdict of liability with clearly inadequate damages of only medical expenses but no non-economic damages in case where liability was hotly contested strongly suggested compromised verdict).

Because the Estate rejected the additur of $9500 ordered by the trial court, the remedy for a compromised verdict is a new trial. Here, the trial court ordered a new trial only on the issues of causation and damages, which pleased neither side. The Estate argues that the new trial should be limited to determining only damages, while Nursing Home asserts that the new trial should address the issues of liability, causation, and damages.

The Estate's motion for additur or new trial was based upon section 768.74, Florida Statutes (2015), which provides in part:

> (1) In any action to which this part applies wherein the trier of fact determines that liability exists on the part of the defendant and a verdict is rendered which awards money damages to the plaintiff, it shall be the responsibility of the court, upon proper motion, to review the amount of such award to determine if such amount is excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact.
>
> . . . .
>
> (4) If the party adversely affected by such remittitur or additur does not agree, the court shall order a new trial in the cause on the issue of **damages only**.

5

§ 768.74(1)&(4), Fla. Stat. (2015) (emphasis added). The Estate argues that because the jury found liability, this case fits squarely within section 768.74, even though the trial court determined that the money damages awarded by the jury were inadequate. The Estate asserts that the statute provides for a new trial on damages only and does not provide for a new trial on causation and damages, as ordered by the trial court. Although the Estate reads the statute correctly, the analysis does not end there.

It has long been the law in Florida that

> [t]o grant a new trial on the issue of damages alone, it must appear that on the evidence adduced at the trial, the liability of the defendant was unequivocally established without substantial dispute and the inadequacy of the verdict was induced by a misconception of the law or the failure of the jury to consider all of the elements of damages submitted, and not as a result of a compromise by the jury on the issue of liability.

*1661 Corp. v. Snyder*, 267 So. 2d 362, 364 (Fla. 1st DCA 1972). The instant case clearly does not fall into that category.

In *Watson,* the jury's verdict was similar to that in the instant case: a finding of liability, an award of prior medical bills, but no award for pain and suffering. 563 So. 2d at 722. The Fourth District found that "only a jury of unreasonable persons would not have compensated Mrs. Watson for her pain and suffering." *Id.* The case was remanded for a new trial on both liability and damages because "when a damage award is clearly inadequate and the issue of liability is hotly contested, such circumstances give rise to a suggestion that the jury may have compromised its verdict." *Id.*

In *Broward School Board v. Dombrosky*, 579 So. 2d 748, 749 (Fla. 4th DCA 1991), the injured plaintiff raised the same argument that the Estate offers here, namely that section 768.74 limits any new trial to damages alone. The Fourth District considered, but

6

rejected, that argument. *Dombrosky*, 579 So. 2d 748. Instead it remanded the case for a new trial on the issues of liability and damages because "there [was] some suggestion from the hotly contested evidence of liability that the jury may have compromised on the verdict, especially in light of the jury's decision to give a small award of damages to [the plaintiff.]" *Id.* at 750. Likewise, in *Food Lion*, after finding "a strong indication of compromise on the issue of liability," this court ordered a new trial on liability and damages. 712 So. 2d at 803. In doing so, we recognized that section 768.74 permits the party to choose between "the amount of additur or a new trial on damages only." *Id.* We did not, however, "believe that the legislature intended to preclude a court from ordering a new trial on both damages and liability where the jury compromised the verdict." *Id.*

More recently, this court observed in *Westminster Community Care Services, Inc. v. Mikesell*, 12 So. 3d 838, 841-42 (Fla. 5th DCA 2009), that:

> A line of decisions rendered by the district courts, including this court, hold that despite the limiting provision in section 768.74(4), when a jury award is **inadequate** and an additur is necessary to correct the inadequacy, a new trial on the issues of liability and damages is appropriate when the **liability issue was hotly contested by the parties**.

(emphasis added) (citations omitted); *accord REWJB Dairy Plant v. Bombardier Capital, Inc.*, 152 So. 3d 21, 28 (Fla. 3d DCA 2014).

In *Calloway*, a slip and fall case, the Fourth District found that the jury had likely reached an improper compromised verdict which apportioned liability equally between plaintiff and defendant and awarded less than half of plaintiff's undisputed past medical bills and lost wages. 560 So. 2d at 810. The plaintiff in the case testified that she did not know what caused her to trip; thus, the jury was confronted with each side's expert testimony, which was predictably conflicting. *Id.* In addition to ordering a new trial on

7

damages, the court stated that it was "convinced that retrial of the liability issue [was] warranted in the light of that aspect of the case having been vigorously contested." *Id.* at 809. Whether liability is hotly contested is determined by the evidence and arguments presented by the parties, not by whether one could overhear the jury's deliberations. *Street v. H.R. Mortg. & Realty Co.*, 949 So. 2d 1158, 1161-62 (Fla. 4th DCA 2007).

Courts and aggrieved litigants often state that no rational or reasonable jury, on the evidence presented, could have found liability, yet returned such a paltry award of damages. *Watson*, 563 So. 2d at 722; *Calloway,* 506 So. 2d at 809. Justice is not served by accepting any aspect of a verdict returned by a jury that acted irrationally or unreasonably in reaching a comprised verdict on the issues of liability and damages. "[A] compromised verdict [] does not reflect a true and just decision based on the evidence and the pertinent law." *Westminster*, 12 So. 3d at 842.

Here, liability and causation were hotly contested. The instant case is not one in which there was a discreet negligent event resulting in a new, well-defined injury, such as one might see in a slip and fall that resulted in a broken hip. The trial court's order limiting the re-trial to causation and damages may have been appropriate with those facts. However, Ms. Mercado was in Nursing Home's care for an extended period of time, during which an infection began and progressed. The Estate's testifying medical expert was well-credentialed, as were the Nursing Home's medical and nursing experts. The experts gave detailed and well-supported, but conflicting, opinions on whether Appellant complied with the prevailing standard of care, what caused the onset of infection, whether the infection was timely and properly treated, the impact of her other medical conditions, and the medical reason for amputating Ms. Mercado's left leg.

8

Given the sanctity and privacy of jury deliberations, a court's conclusion that the jury's verdict is the result of an improper compromise must rest on its determination of whether the well-established hallmarks are present.[1]  Here we find that liability and causation were hotly contested at trial, and that the damage award was clearly inadequate, leading us to conclude that the jury rendered a compromised verdict. Although we agree with the trial court that the jury's verdict cannot stand, for the reasons discussed above, we remand for a new trial on liability, causation, and damages.

REVERSED AND REMANDED.


JACOBUS, B.W., Senior Judge, concurs.
BERGER, J., concurs specially with opinion.

---

[1] We suggest that courts adopt a rule that requires a "complete new trial when liability is close and damages clearly inadequate." *Timmy Woods Beverly Hills, Ltd. v. Greenwald*, 475 So. 2d 256, 258 n.5 (Fla. 3d DCA 1985).  Such a rule would prevent "appellate courts from having to engage in the type of post-hoc mind-reading which would be necessary to decide whether the jury was confused, in which case a new trial on damages alone would be adequate, or compromising, which would require a new trial on liability as well." *Id.*

BERGER, J., concurring specially.                    Case No. 5D16-1725

I concur in the opinion based on this court's prior precedent. <u>See</u> <u>Westminster Cmty. Care Servs., Inc. v. Mikesell</u>, 12 So. 3d 838, 841-42 (Fla. 5th DCA 2009). However, were I writing on a clean slate, I would reverse the order under review and remand for a new trial solely on the issue of damages based on the Legislature's express directive in section 768.74(1) and (4), Florida Statutes.